IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br>v.<br><br>$10,631,446.80 SEIZED FROM BANK OF AMERICA ACCOUNT 325146616583; and $5,003,120.98 SEIZED FROM BANK OF AMERICA ACCOUNT 325146616596,<br><br>    *Defendants in Rem.* | Case No. 3:24-CV-3221 |

## UNITED STATES' COMPLAINT FOR FORFEITURE

The United States of America files this verified complaint *in rem* against the ("Defendant Property") as described in Section II, and in support states:

### I. JURISDICTION AND VENUE

1. This court has subject matter jurisdiction of this cause of action in rem by virtue of the provisions of 28 U.S.C. §§ 1345 and 1355(a). Venue is proper under 28 U.S.C. § 1355(b)(1) and 28 U.S.C. § 1395(b).

2. The statutory basis for this suit is 18 U.S.C. §§ 981(a)(1)(C), 981(a)(1)(A). Also applicable are 28 U.S.C. §§ 2461 and 2465, 18 U.S.C. §§ 983, and Supplemental Rule G, Federal Rules Civil Procedure Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

**Complaint for Forfeiture – Page 1**

## II. DEFENDANT PROPERTY

3. The Defendant Property,[1] which has been seized and in the custody of the United States Secret Service in the Northern District of Texas, is the following:

   a. $10,631,446.80 SEIZED PURSUANT TO WARRANT NO. 3:24-MJ-206-RB FROM BANK OF AMERICA ACCOUNT 325146616583 IN THE NAME OF BIODX LABS LLC; and

   b. $5,003,120.98 SEIZED PURSUANT TO WARRANT NO. 3:24-MJ-204-RB FROM BANK OF AMERICA ACCOUNT 325146616596 IN THE NAME OF BIODX LABS LLC,

collectively "**the Defendant Property**".

## III. POTENTIAL CLAIMANTS TO DEFENDANT PROPERTY

4. The names and last known addresses of those individuals or entities reasonably appearing to the government at this time that may be potential claimants to the Defendant Property are:

   o BioDX Labs LLC,
   670 N. MacArthur Blvd., Suite 160
   Attn: Syed Osman a.k.a Osman Syed
   Coppell, Texas 75019

   o Syed Osman, a.k.a. Osman Syed
   10517 MacArthur Blvd. Apt. 1031
   Irving, TX 70563

---

[1] Appreciation in the value of property is also subject to forfeiture. *See, e.g., United States v. Betancourt*, 422 F.3d 240, 251 (5th Cir. 2005)*; United States v. Vogel*, No. 4:08-CR-224, 2010 WL 547344, at *4 (E.D. Tex. Feb. 10, 2010). In addition, any proceeds, such as income, funds, payments, etc., derived from the property is subject to forfeiture. *See United States v. Sanders*, 952 F.3d 263, 286 (5th Cir. 2020) (proceeds are property the defendant would not have obtained or retained but for the commission of the offense). Both the appreciation in value of the Defendant Property and any proceeds obtained or retained from the Defendant Property are sought for forfeiture in this case and are considered to be included in the definition of Defendant Property.

**Complaint for Forfeiture – Page 2**

- Syed Osman
  2605 Salmon St.
  Irving, TX 75062

Notice of this complaint will be provided to the above-listed individuals and/or entities.

## IV. STATUTORY BASIS

5. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it is property that constitutes or is derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343.

6. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it is property that constitutes or is derived from gross proceeds traceable to health care fraud, or conspiracy thereof, in violation 18 U.S.C. § 1347 (18 U.S.C. § 1349).

7. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because the property is involved in or traceable to a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957.

## V. FACTS SUPPORTING FORFEITURE

### Summary of the Scheme

8. The underlying facts involve a health care fraud scheme beginning in or around August 2023 and continuing through in or around September 2024, Syed Osman, a.k.a. Osman Syed ("Osman"), acting through BIODX LABS LLC ("BIODX LABS"), along with others both known and unknown, did knowingly and willfully cause the submission of approximately $79 million in false and fraudulent claims to Medicare and

**Complaint for Forfeiture – Page 3**

Medicaid for laboratory testing that was not medically necessary, ineligible for reimbursement, and not provided as represented. As a result of these false and fraudulent claims, Medicare and Medicaid made payments to BIODX LABS in at least the approximate amount of $17 million.  On November 19, 2024, a grand jury returned an indictment against Osman Syed a/k/a Syed Osman with three counts of health care fraud in violation of 18 U.S.C. § 1347, one count of conspiracy to engage in money transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §§ 1956(h) and 1957, and three counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957.  *See* Indictment, *United States v. Osman Syed a/k/a Syed Osman*, 3:24-CR-522-M (N.D. Tex.-Dallas).

Osman and Related Entities and Accounts

9. Osman is an Indian national who was present in the United States on a non-immigrant (F-1) student visa.

10. BIODX LABS was a Texas company with its principal place of business at 670 North MacArthur Boulevard, Suite 160, Coppell, Texas 75019, within the Northern District of Texas, that purported to operate as a clinical testing laboratory.

11. BIODX LABS maintained the following accounts at Bank of America: account ending in x6583 ("Subject Bank Account 1") and account ending in x6596 ("Subject Bank Account 2") (collectively, **Subject Bank Accounts**).  The signature cards for the **Subject Bank Accounts** are dated October 6, 2023, and list Osman, and Osman alone, as holding signature authorities on the accounts.

**Complaint for Forfeiture – Page 4**

Background on the Medicare and Medicaid Programs

12. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

13. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

14. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Medicare beneficiaries were issued beneficiary identification cards that certified eligibility for Medicare and identified each beneficiary by a unique number.

15. Physicians, clinics, and other health care providers, including laboratories (collectively, "providers"), that provided services to beneficiaries were able to apply for and obtain a "provider number." Providers that received a Medicare provider number were able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

16. The Medicaid Program ("Medicaid"), in Texas, was a state-administered health insurance program funded by the United States government and by the State of Texas. Medicaid helped pay for reasonable and necessary medical procedures, services, and items, such as physician services and DME, provided by qualified health care

**Complaint for Forfeiture – Page 5**

professionals to individuals who were deemed eligible under state low-income programs. Individuals who received benefits under Medicaid were referred to as Medicaid "recipients."

17. Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

18. The Texas Health and Human Services Commission ("HHSC") administered Medicaid in Texas. The State of Texas contracted with Texas Medicaid and Healthcare Partnership ("TMHP") to administer Texas Medicaid on behalf of Texas HHSC.

19. Medicaid in Texas paid a portion of a claim originally submitted to Medicare in the event the beneficiary had both Medicare and Medicaid coverage. This portion was generally a percentage of the amount Medicare allowed for the billed charge. Such claims were automatically sent to Medicaid once processed by Medicare. Medicaid paid its portion if Medicare originally allowed the claim.

20. HHSC contracted with Managed Care Organizations ("MCOs") to administer program benefits to Medicaid beneficiaries. MCO plans were operated by private companies approved by Medicaid. Those companies were often referred to as MCO plan "sponsors."

21. Medicare and Medicaid paid for claims only if the items or services were medically necessary for the treatment or diagnosis of the beneficiary's illness or injury, documented, and actually provided as represented.

**Complaint for Forfeiture – Page 6**

22. When submitting claims to Medicare and Medicaid, providers use HCPCS (Healthcare Common Procedure Coding System) codes. HCPCS codes are part of a uniform coding system used to identify, describe, and code medical, surgical, and diagnostic services performed by practicing physicians and other health care providers.

23. Medical providers indicate on their claims the HCPCS codes that correspond to the types of equipment or services for which Medicare and Medicare are being charged. These codes are used to determine the reimbursement. The HCPCS codes relevant to this case are 87637 and 87913, among others. HCPCS code 87637 is defined as "Detection test by multiplex amplified probe technique for severe acute respiratory syndrome coronavirus 2 (SARS-COV-2) (Covid-19), influenza virus types A and B, and respiratory syncytial virus." HCPCS Code 87913 is defined as "Genotype analysis of severe acute respiratory syndrome coronavirus 2 (Covid-19) by nucleic acid for identification of mutations in targeted regions."[2]

24. According to the Local Coverage Determination ("LCD"),[3] documentation supporting the claims for HCPCS codes 87637 and 87913 must include the "signature of the physician or non-physician practitioner responsible for and providing the care to the patient." Novitas Solutions, Inc., Article - Billing and Coding: Respiratory Pathogen Panel Testing (A58575) (2023).

---

[2] *See* https://www.aapc.com/codes/cpt-codes/87637, and https://www.aapc.com/codes/cpt-codes/87913.

[3] An LCD is a determination by a Medicare Administrative Contractor (MAC) whether to cover a particular service or item is reasonable and necessary, and therefore covered by Medicare within a specific jurisdiction that the MAC oversees.

**Complaint for Forfeiture – Page 7**

The Fraudulent Scheme

25. Based on my training and experience and my knowledge of this investigation, I believe that Osman engaged in a widespread practice of billing Medicare and Medicaid for laboratory tests, specifically respiratory pathogen panel tests, that were medically unnecessary, ineligible for reimbursement, and not provided as represented. As further explained in the attached declaration, the **Defendant Property** contains proceeds of a crime, which there is cause to believe were involved with the activity and transactions in violation of 18 U.S.C. § 1349 (conspiracy to commit health care fraud and/or wire fraud); 18 U.S.C. § 1347 (health care fraud); 18 U.S.C. § 1343 (wire fraud) (collectively, the "**Subject Offenses**"). Therefore, based on a preponderance of evidence, the funds that Medicare and Medicaid deposited into the **Subject Bank Accounts** were obtained in violation of **Subject Offenses**.

26. As further explained in the attached declaration, BIODX LABS was located in Coppell, Texas, located in the Northern District of Texas. In addition, Osman's last known address was in Irving, Texas, located in the Northern District of Texas.

27. On November 22, 2023, Osman signed the Form CMS-855B as the sole owner and operator of BIODX LABS, attesting he would abide by Medicare's rules and regulations.

28. BIODX LABS receives Medicare reimbursement via Electronic Funds Transfer ("EFT"). Osman, who is listed as the point of contact for BIODX LABS, authorized Medicare to deposit payments to BIODX LABS into **Subject Bank Account 1.**

**Complaint for Forfeiture – Page 8**

29. Between November 16, 2023, and January 29, 2024, BIODX LABS submitted approximately 140,669 claims to Medicare for HCPCS codes 87637 and 87913. BIODX LABS billed $70,340,000 for those claims (approximately 99.9% of the total claims BioDX Labs submitted to Medicare). Physician 1 was listed as the referring physician on all claims.

30. Between November 2023 and February 2024, Medicare and Medicaid collectively paid BIODX LABS over $15 million via EFT into **Subject Bank Account 1**. All other non-Medicare deposits into **Subject Bank Account 1,** during the same time period, did not exceed $250,000. Further, on or about December 19, 2023, $5,000,000 was transferred via online transaction from **Subject Bank Account 1** to **Subject Bank Account 2**.

31. BIODX LABS submitted more than approximately $1,417,000 in claims for over 1,090 Medicare beneficiaries who had passed away prior to the date of service listed in the claim. One of the beneficiaries had been deceased for over 35 years, and over 320 of the beneficiaries had been deceased prior to 2023, even though all of the corresponding claims associated with those beneficiaries were for dates of service in 2023.

32. Between December 7, 2023, and February 13, 2024, the Medicare Benefit Integrity Unit ("BIU") received over 191 complaints related to BIODX LABS. The BIU is a program integrity unit that is responsible for preventing, detecting, and deterring Medicare fraud. One of the many functions of the BIU is to receive and catalog

complaints that are received by the Medicare Fraud Hotline. These complaints are available for law enforcement to review. The complaints relating to BIODX LABS included the following, among others:

      a. 147 Medicare beneficiaries who did not receive services;

      b. 24 Medicare beneficiaries who do not know the provider; and

      c. 2 Medicare beneficiary who suspected that they were the victim of identity theft.

33. In addition to the fraud hotline where complaints against providers are routed to the BIU, HHS-OIG has another Medicare Fraud Hotline. When complaints are received there, they are routed directly to law enforcement. HHS-OIG received a hotline complaint regarding BIODX LABS on January 24, 2024. The complainant stated the following: "I do not know of Biodx Labs. Biodx [L]abs [b]illed $500 two times each to Medicare and to my supplement insurance co."

34. Agents have interviewed Medicare beneficiaries whose claims appeared in BIODX LAB's data, all of whom were unfamiliar with BIODX LABS and Physician 1, the physician listed as the beneficiaries' referring provider.

35. The beneficiaries interviewed were unsure how BIODX LABS obtained their Medicare information, and four of them have already submitted requests for new Medicare numbers. All beneficiaries interviewed to date stated they believed these charges to be fictitious.

36. Osman, acting through BIODX LABS, used the personal identifying information of Physician 1, without Physician 1's knowledge or consent, to cause the

**Complaint for Forfeiture – Page 10**

submission of millions of dollars in claims to Medicare and Medicaid for respiratory pathogen panel tests for beneficiaries and recipients, even though Physician 1 had no prior relationship with the beneficiaries and recipients, was not treating and consulting the beneficiaries or recipients for respiratory symptoms, and did not use the tests to treat the beneficiaries or recipients.

37. In furtherance of the scheme, and to conceal that BIODX LABS did not perform the tests as billed, Osman falsely represented that BIODX LABS used reference laboratories to perform its testing.

38. This linking of proceeds to the fraudulent scheme, along with further description of the fraudulent scheme offense, is shown by Exhibit 1, the Declaration in support of the United States' Complaint for Forfeiture of United States Secret Service Special Agent Brianna Anderson, attached and filed in support of, and incorporated into, this Complaint. *See United States v. 2121 Kirby Drive*, No. H-06-3335, 2007 WL 3378353, at *3 (S.D. Tex. Nov. 13, 2007) (in determining sufficiency of a complaint, the court will look not only to the complaint itself, but to any affidavit or other attachment).

## VI. RELIEF SOUGHT

THEREFORE, the United States requests the following:

A. Publication of notice of this forfeiture action be made by posting notice on the official government internet site, www.forfeiture.gov, for at least 30 consecutive days, in accordance with Supplemental Rule G(4)(a)-(5).

B. Direct notice of this forfeiture action be given to those persons who reasonably appear to be potential claimants in accordance with Supplemental Rule

**Complaint for Forfeiture – Page 11**

G(4)(b)-(5).

    C.    In order to avoid forfeiture of the Defendant Property, all persons having any interest in or right against the Defendant Property be advised by the public notice or the direct notice to timely file in this court a verified claim identifying the interest or right to the Defendant Property as required by Supplemental Rule G(5)(a) and 18 U.S.C. § 983(a)(4)(A); and to file an answer to this Complaint for Forfeiture or motion under Fed. R. Civ. P. 12 in the manner required by the Supplemental Rule G(5)(b) and 18 U.S.C. § 983(a)(4)(B). Further, any person filing a verified claim of interest or right and/or an answer shall serve a copy on Dimitri N. Rocha, Assistant United States Attorney, 1100 Commerce Street, Suite 300, Dallas, Texas 75242.

    D.    Pursuant to Rule G(5)(a), the claim must (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property, and (C) be signed by the claimant under penalty of perjury. Any person who asserts an interest in the Defendant Property must filed a verified claim within 35 days after the date the notice is sent if the notice is delivered by mail, or within 35 days of the date of delivery if the notice is personally served and not sent by mail.

    E.    Any person who files a verified claim must then file an answer to the complaint or a motion under Rule 12 within 21 days after filing the verified claim.

    F.    At the conclusion of this proceeding, the Defendant Property be condemned by order and judgment of this court and declared and decreed to be forfeited to the United States of America in accordance with law.

    G.    All costs and expenses incurred by the United States in obtaining the

**Complaint for Forfeiture – Page 12**

forfeiture of the Defendant Property be appropriately taxed against any person or entity who may file a verified claim and answer herein, and/or if more than one person or entity files a verified claim and answer herein be jointly taxed and prorated among them, as the court deems just and equitable.

H.      The United States have such other and further relief, at law or in equity, to which it may show itself justly entitled.

FILED 12/23/2024

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Dimitri N. Rocha*
Dimitri N. Rocha
Assistant United States Attorney
Florida State Bar No. 693332
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: 214-659-8650
Facsimile: 214-659-8803
Dimitri.Rocha@usdoj.gov
ATTORNEYS FOR PLAINTIFF

**Complaint for Forfeiture – Page 13**

## VERIFICATION OF COMPLAINT

I, Brianna Anderson, am a Special Agent with the United States Secret Service, and I have been assigned to assist in the forfeiture of the Defendant Property. I have read the foregoing Complaint for Forfeiture and know its contents. The information contained in the Complaint for Forfeiture has been furnished from official government sources and, based on my information and belief, the allegations contained in the Complaint are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December _23_, 2024

*Brianna Anderson*
_____
Brianna Anderson
Special Agent
United States Secret Service